```
UNITED STATES DISTRICT COURT            FOR ONLINE PUBLICATION ONLY
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------- X
SWISSPORT PUERTO RICO, INC.,            :
                                        :
                        Plaintiff,      :     MEMORANDUM
                                        :     AND ORDER
        - against -                     :
                                        :     05 CV 671 (JG)
                                        :
EAGLE GLOBAL LOGISTICS, INC.,           :
                                        :
                        Defendant.      :
---------------------------------------------------------------- X
```

A P P E A R A N C E S :

       MENDES & MOUNT, LLP
           750 Seventh Avenue
           New York, NY 10019
       By:   Ralph V. Pagano
           Attorneys for Plaintiff

       DUANE MORRIS LLP
           744 Broad Street, Suite 1200
           Newark, NJ 07102
       By:   Aaron Van Nostrand
           Attorneys for Defendant

JOHN GLEESON, United States District Judge:

        Swissport Puerto Rico, Inc. ("Swissport") seeks indemnification pursuant to a contract with Eagle Global Logistics, Inc. ("Eagle") for damages Swissport employees caused to an aircraft at the Luis Muñoz Marín International Airport in San Juan, Puerto Rico. The parties have each moved for summary judgment. For the reasons set forth below, the cross-motions are denied.

BACKGROUND[1]

Swissport provides ground handling and marshalling services to Eagle, a logistics firm, pursuant to a contract -- the Standard Ground Handling Agreement ("SGHA"). Tradewinds Airlines, Inc. ("Tradewinds," which is not a party to this action) operates aircraft for Eagle. This dispute concerns an incident in which Swissport employees damaged an aircraft operated by Tradewinds for Eagle. Tradewinds sued Swissport, and the parties subsequently settled the claim. Now, Swissport claims that the SGHA entitles Swissport to indemnification from Eagle for the money Swissport had to pay Tradewinds in settlement. Eagle argues it has no such obligation under the contract.

A. *The SGHA*

    1. <u>The General Indemnity Provision</u>

Article 8.1 of the SGHA provides that, in general, Eagle shall indemnify Swissport as follows:

> Except as stated in Sub-Article 8.5, [Eagle] shall not make any claim against [Swissport] and shall indemnify it (subject as hereinafter provided) against any legal liability for claims or suits, including costs and expenses incidental thereto, in respect of:
>
> . . .
>
> (d)    damage to or loss of property owned or operated by, or on behalf of, [Eagle] and any consequential loss or damage;
>
> arising from an act or omission of [Swissport] in the performance of this Agreement unless done with the intent to cause damage, death, delay, injury or loss or recklessly and with the knowledge that damage, death, delay, injury or loss would probably result.

---

[1]    Unless noted otherwise, the parties do not dispute the facts set forth.

Pagano Aff. Ex D at 549. Article 8(c) provides that an "'act or omission' shall include negligence." *Id.* Article 8.1 also contains a notice provision:

> PROVIDED ALSO THAT [Swissport] shall notify [Eagle] of any claims or suits without undue delay and shall furnish such assistance as [Eagle] may reasonably require.

*Id.* at 550.

### 2. The Exception

Article 8.5 of the SGHA provides for an exception to the general indemnity provision set forth in Article 8.1(d):

> Notwithstanding Sub-Article 8.1(d), [Swissport] shall indemnify [Eagle] against any physical loss of or damage to [Eagle]'s Aircraft caused by [Swissport]'s negligent operation of ground support equipment . . . .

*Id.* "Ground support equipment" by contract means "all equipment used in the performance of ground handling services included in Annex A, whether fixed or mobile." *Id.* at 549. Article 8.5 also states a rule by which to interpret the scope of the exception:

> For the avoidance of doubt, save as expressly stated, this Sub-Article 8.5 does not affect or prejudice the generality of the provisions of Sub-Article 8.1 including the principle that [Eagle] shall not make any claim against [Swissport] and shall indemnify it against any liability in respect of any and all consequential loss or damage howsoever arising.

*Id.* at 550.

B. *The Incident*

On December 5, 2001, an aircraft operated by Tradewinds struck a "main deck loader" -- a hydraulic lift -- causing damage to the aircraft. *See* Lopez Dep. 18, June 22, 2006; Eagle's Rule 56.1 Response ¶ 4. The parties dispute whether the main deck loader was parked at the time. *Compare* Swissport's Rule 56.1 Statement ¶ 4 *with* Eagle's Rule 56.1 Response ¶ 4.

3

Affidavits of Swissport employees involved in the incident state that as the employees marshalled the aircraft, the left-hand wing walker realized the aircraft would not clear the main deck loader but, due to rain, noise and other equipment blocking the way, he could not get the attention of the main marshaller in time to prevent the incident. *See* Baez Aff. ¶¶ 5-6; Morales Aff. ¶¶ 5-8. In its Rule 56.1 response, Eagle attempts to controvert these claims with the single word "Denied." Eagle's Rule 56.1 Response ¶¶ 11-12. I therefore deem these facts admitted, as Eagle does not specifically controvert them.[2]

C.  *The Settlement*

Eagle was aware of the December 5, 2001 incident by December 6, 2001. *See* Eagle's Rule 56.1 Response ¶ 25.

On September 11, 2002, Tradewinds sued Swissport, among others, in the United States District Court for the District of Puerto Rico. *See* Pagano Aff. Ex. M (Complaint, *Tradewinds Int'l Airlines, Inc. v. Swissport P.R., Inc.*, No. 02-cv-2374-RLA (D. P.R. Sept. 11 2002). Swissport was served on September 20, 2002. Eagle's Rule 56.1 Statement ¶ 15. On December 23, 2002, counsel for Swissport sent a letter, by facsimile and post, to Eagle tendering the defense of the Tradewinds action and demanding indemnification. Swissport's Rule 56.1 Response ¶ 18; *see also* Pagano Aff., Ex. N at 1.

On January 16, 2003, Swissport's counsel telephoned Eagle's counsel, demanding

---

[2]  *See* Local Civ. R. 56.1(c) (facts set forth in Rule 56.1 statement "will be deemed admitted unless *specifically* controverted" in the response); *SEC v. Treadway*, 430 F. Supp. 2d 293, 300 n.4 (S.D.N.Y. 2006) ("Unless specifically disputed, each fact is deemed admitted, in accordance with Local Rule 56.1(c)."); *see also Giannullo v. City of New York*, 322 F.3d 139, 140 (2d Cir. 2003) ("Rule 56.1 . . . requires . . . a statement of the allegedly undisputed facts on which the moving party relies, together with citation to the admissible evidence of record supporting each such fact. If the opposing party then fails to controvert a fact so set forth in the moving party's Rule 56.1 statement, that fact will be deemed admitted.") (citations omitted).

4

that Eagle participate in a settlement conference the following day. Eagle's Rule 56.1 Statement ¶ 21; *see also* Pagano Aff. Ex. N at 2 (Letter of J. Bradley Green, Feb. 3, 2003). On February 3, 2003, counsel for Eagle requested from Swissport counsel's a complete copy of all settlement documents and all agreements between Eagle and Swissport that supported Swissport's indemnification claim. Eagle's Rule 56.1 Statement ¶¶ 24-25; Swissport's 56.1 Response ¶¶ 24-25; *see also* Pagano Aff. Ex. N at 2 (Letter of J. Bradley Green, Feb. 3, 2003). Swissport's counsel replied that counsel had no settlement documents at the time. Eagle's Rule 56.1 Statement ¶ 26; *see also* Pagano Aff. Ex. N at 3 (Letter of Alexis M. Dougherty, Feb. 4, 2003).

On February 10, 2003, counsel for Eagle communicated to Swissport's counsel that Eagle had no "duty or obligation to indemnify Swissport against the allegations made in the underlying matter" and that if Swissport settled without "meaningful notice or participation" by Eagle, Eagle "further" denied any duty to indemnify Swissport. *See* Pagano Aff. Ex. N at 4 (Letter of J. Bradley Green, Feb. 10, 2003). On February 13, 2003, Swissport counsel replied, stating, in part:

> As we are still in the process of negotiating with Tradewinds, Eagle can accept the tender, or some portion thereof, and participate in the ongoing settlement discussions. If Eagle chooses not to participate, Eagle does so at its own peril, and we will seek recovery from Eagle, of any settlement monies paid to Tradewinds through appropriate legal proceedings.

*Id.* at 6 (Letter of Ralph V. Pagano, Feb. 13, 2003). On February 14, 2003, Tradewinds and Swissport informed the district court that they had reached a settlement. Eagle's Rule 56.1 Statement ¶ 30. I deem Swissport's summary denial of this fact, *see* Swissport's Rule 56.1 Response ¶ 30, to be an admission. Tradewinds and Swissport entered into a settlement agreement on February 21, 2003. *See* Pagano Aff. Ex. O.

5

On March 3, 2003, Eagle's counsel accepted the offer to participate in settlement negotiations. *Id.* Ex. N at 7 (Letter of J. Bradley Green, Mar. 3, 2003). On March 11, 2003, Swissport counsel replied that the lawsuit was settled. *Id.* at 8 (Letter of Alexis M. Dougherty, Mar. 11,[3] 2003). Swissport demanded $148,000 from Eagle. *Id.* This action for indemnification followed.

## DISCUSSION

A.  *The Summary Judgment Standard of Review*

A moving party is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party must demonstrate that no genuine issue exists as to any material fact. *Gallo v. Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219, 1223 (2d Cir. 1994). For summary judgment purposes, a fact is "material" when its resolution "might affect the outcome of the suit under the governing law . . . ." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue is "genuine" when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* Accordingly, the test for whether an issue is genuine requires "the inferences to be drawn from the underlying facts [to] be viewed in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quotation marks and citation omitted).

---

[3]  This letter is dated "February 11, 2003," with the word "February" crossed out and the word "March" written above it. Swissport has admitted that this letter was actually dated March 11, 2003. *See* Swissport's Rule 56.1 Response ¶ 34.

B.     *The Parties' Claims*

Swissport argues that it should receive indemnity from Eagle pursuant to the SGHA. Eagle argues that the SGHA does not entitle Swissport to indemnity, as a matter of contract interpretation. In the alternative, Eagle argues that certain issues of material fact preclude judgment as a matter of law in favor of Swissport: whether Swissport unduly delayed in notifying Eagle of the claim or suit; whether Eagle was afforded a meaningful opportunity to participate in the Tradewinds settlement; and whether the settlement was reasonable.[4]

1.     <u>Swissport's Claim for Indemnity Pursuant to Article 8.1 of the SGHA</u>

Swissport argues that it should receive indemnity from Eagle pursuant to Article 8.1(d) of the SGHA, which compels Eagle to indemnify Swissport for "damage to or loss of property owned or operated by, or on behalf of,[5] [Eagle] and any consequential loss or damage . . . arising from an act or omission" of Swissport. Pagano Aff. Ex. D at 549. "The proper interpretation of an unambiguous contract is a question of law for the court, and a dispute on such an issue may properly be resolved by summary judgment." *Omni Quartz, Ltd. v. CVS Corp.*, 287 F.3d 61, 65 (2d Cir. 2002). The inquiry into whether a particular term in a contract is ambiguous is also a question for the court. *See, e.g.*, *67 Wall St. Co. v. Franklin Nat'l Bank*, 37 N.Y.2d 245, 248 (1975) ("Unlike the trial court, we find article 41 to be ambiguous, susceptible of differing interpretations."). Because there is no cognizable dispute that the damage to the Tradewinds aircraft arose out of the acts and omissions of the Swissport wing walker and main marshaller, *compare* Swissport's Rule 56.1 Statement ¶¶ 11-12 *with* Eagle's Rule 56.1 Response

---

[4]     Eagle also contends it is entitled to summary judgment in its favor on these issues.

[5]     The parties do not dispute that the Tradewinds aircraft was, at the time of the incident, being operated "on behalf of" Eagle.

7

¶¶ 11-12, I conclude that the express terms of Paragraph 8.1(d) establish Swissport's right to indemnity from Eagle.

Whether or not Swissport's employees were negligent in marshalling the aircraft into the main deck loader is not relevant to this conclusion. Swissport contends, and Eagle does not dispute, that Article 8.1(d) encompasses acts or omissions of Swissport due to its negligence or that of its employees. *See* Memorandum of Law in Support of Plaintiff Swissport's Motion for Summary Judgment 10-11. Under New York law,[6] a party to a contract may be indemnified even against that promisor's own negligence when the "plain meaning" of the terms "fairly includes the liability for the active negligence of" the promisor. *Levine v. Shell Oil Co.*, 28 N.Y.2d 205, 212 (1971) (holding that contract promising to indemnify oil company against "any and all claims, suits, loss, cost and liability on account of injury or death of persons . . . caused by or happening in connection with the premises" included indemnification against promisor's own negligence). Here, Article 8.1 provides in relevant part that indemnity shall encompass "any legal liability for claims or suits" concerning damage to Eagle property "arising from an act or omission of [Swissport] in the performance of" the contract, except those acts or omissions committed "with the intent to cause damage . . . or recklessly and with the knowledge that damage . . . would probably result." Pagano Aff. Ex. D at 549. Because the parties to the SGHA took pains to specifically exclude acts or omissions coupled with greater culpability than

---

[6] Pursuant to my diversity jurisdiction over this case, I must apply New York choice of law rules to determine the law to be applied, because New York is the forum state. *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496-97 (1941); *Gilbert v. Seton Hall Univ.*, 332 F.3d 105, 109 (2d Cir. 2003). Because the parties agree that there is no actual conflict between the law of New York and the law of Puerto Rico, I apply New York law to the claims at issue. *See In re Allstate Ins. Co.*, 81 N.Y.2d 219, 223 (1993) ("The first step in any case presenting a potential choice of law issue is to determine whether there is an actual conflict between the laws of the jurisdictions involved.").

negligence, but did not exclude acts or omissions of negligence themselves, I conclude that the plain meaning of this language fairly includes acts or omissions of negligence. The contract eliminates any doubt about the propriety of this interpretation by specifically providing in Article 8(c) that the phase "'act or omission' shall include negligence." *Id.*

Eagle argues that Article 8.1(d) does not govern. According to Eagle, Swissport's "negligent operation" of the deck loader caused physical damage to the Tradewinds aircraft (operated on behalf of Eagle), triggering Article 8.5 of the SGHA. Article 8.5 provides that *Swissport* must indemnify *Eagle* for "any physical loss of or damage to [Eagle]'s Aircraft caused by [Swissport]'s negligent operation of ground support equipment . . . ." *Id.* at 550. On this theory, Eagle need not indemnify Swissport for the December 5, 2001 incident because Swissport has no right of indemnity for the sort of incident at issue.

There are two problems with this argument. The first is a problem of proof. Eagle refers to no admissible evidence reflecting whether Swissport had ever operated, or was responsible for, the main deck loader at issue.[7] In the absence of such evidence, I lack any basis to conclude as a matter of law that Swissport's "negligent operation" of the deck loader caused the damage to the Tradewinds aircraft. For identical reasons, I cannot conclude that Eagle has

---

[7] At oral argument, while addressing a different issue, counsel for Swissport invoked a December 6, 2001 letter from Javier Watlignton [sic], an Eagle employee, to Mr. Jose L. Baez, a Swissport employee, which listed "many operational flaws from your [*i.e.*, Swissport's] end" during the December 5, 2001 incident, including the item "Main Deck incorrectly parked by Swissport employee." Pagano Aff. Ex. G. Eagle cannot rely upon this statement to prove that a Swissport employee had operated the main deck loader, however, because when it is offered for that purpose the statement is hearsay -- an out-of-court statement offered for the truth of the matter asserted. *See* Fed. R. Evid. 801 (defining hearsay). As hearsay, it is inadmissible evidence. *See* Fed. R. Evid. 802 (hearsay is admissible except when provided in an exception). Of course, the parties' reliance on this letter to prove Eagle's notice of the December 5, 2001 incident, *see* Eagle's Rule 56.1 Response ¶ 25; *see also* discussion of Eagle's notice *infra*, presents no hearsay problem, because the statements in the letter are not offered, in that instance, to prove the truth of the matter asserted.

9

demonstrated an issue of material fact on this question.[8] Accordingly, Eagle has not demonstrated the applicability of Article 8.5 to the facts at issue.

Even setting the problem of proof aside, Eagle cannot establish that Swissport's "negligent operation" caused damage to the Tradewinds aircraft. The reason is that the term "operation" has two lexical meanings, and is therefore ambiguous. The first meaning is similar to "running" or "driving." This narrow usage of "operation" is familiar from the New York no-fault insurance context. *See Walton v. Lumbermens Mut. Cas. Co.*, 88 N.Y.2d 211, 213 (1996) (holding that injuries to driver in fall while unloading items using levelator attached to parked truck did not arise out of the "use or operation" of the motor vehicle within the meaning of N.Y. Ins. Law §§ 5103(a)(1) and 5102(b)). In its motion papers, Swissport actually claims that this is the *only* meaning of "operation" compatible with the SGHA. It is not. The term "operate" can also denote "conduct the affairs of" or "manage." The American Heritage Dictionary of the English Language (4th ed. 2000) (citing the example "operate a business"). It is grammatical for a person who catches sight of an abandoned deck loader in the middle of an active runway to ask, seeking the company responsible, "Which company operates that equipment?" It is likewise grammatical to refer to the company's management of that deck loader as its "operation" of the equipment.[9]

---

[8] The parties disagree about whether the main deck loader is "ground support equipment" for the purposes of the SGHA. As the resolution of this dispute would not cure the outstanding question whether Swissport operated the deck loader, I decline to address the issue.

[9] To be sure, my conclusion that "operation" is ambiguous is compatible with the further conclusion that the parties intended a particular meaning within that ambiguity. Extrinsic evidence of parties' intent is admissible for the purpose of narrowing an ambiguous construction. *67 Wall St. Co.*, 37 N.Y.2d at 248-49; *see also Schuler-Haas Elec. Co. v. Aetna Cas. & Sur. Co.*, 40 N.Y.2d 883, 885 (1976) ("*Absent any relevant extrinsic evidence or the anticipation of the availability thereof*, the resolution of any ambiguity in the written contract between the parties is to be determined by the court as a matter of law.") (emphasis added). But Swissport has not introduced any extrinsic evidence of the parties' intent to cure the ambiguity here, so my conclusion stands.

The ambiguity matters because, assuming Swissport is correct that the main deck loader was parked at the time of the incident,[10] whether the damage to the Tradewinds aircraft was caused by Swissport's "negligent operation" of the deck loader depends upon which meaning of "operation" controls. If "operation" is restricted to "running" or "driving," then Swissport was not "operating" the deck loader at the time of the crash because the deck loader was parked. *Cf. Santo v. Government Employees Ins. Co.*, 819 N.Y.S.2d 279 (2d Dep't 2006) (holding that plaintiff who slipped and fell while walking around a parked vehicle did not arise from the "use and operation" of that vehicle within the meaning of Insurance Law § 5102(b)). On the other hand, if "operation" means "managing," then Swissport was operating the main deck loader during the incident for the purposes of the SGHA (setting aside, of course, the lack of evidence that Swissport had anything to do with the deck loader). The applicability of Article 8.5 therefore depends upon which way one resolves the ambiguity of one of its terms. Fortunately, Article 8.5 itself provides for the resolution of interpretive "doubt" about its applicabilility -- the SGHA mandates that I must interpret Article 8.5 so as not to "affect or prejudice the generality of the provisions of Sub-Article 8.1 including the principle that [Eagle] shall not make any claim against [Swissport] and shall indemnify it against any liability in respect of any and all consequential loss or damage howsoever arising." Pagano Aff. Ex. D at 550. Pursuant to that interpretative rule, I resolve the ambiguity of the term "operation" to respect the "principle" that Eagle should indemnify Swissport, not the other way around.

---

[10] To entertain Eagle's argument that Article 8.5 governs as a matter of law, I consider the facts in the light most favorable to Swissport, the nonmoving party.

2. Eagle's Claims of Late Notice

Eagle argues that the record presents an issue of material fact as to whether Swissport satisfied the notice provision of the SGHA, *see* Pagano Aff. Ex. D at 550, and whether Swissport satisfied its equitable obligation to give Eagle a "meaningful opportunity to defend" the Tradewinds action, *Atl. Richfield Co. v. Interstate Oil Transp. Co.*, 784 F.2d 106, 113 (2d Cir. 1986), *cert. denied*, 479 U.S. 817 (1986). So long as there are issues of material fact with respect to both questions, judgment as a matter of law is unavailable on the central question of whether Eagle must indemnify Swissport. Eagle contends, and Swissport does not dispute, that if Swissport did not in fact satisfy the contractual notice requirement, it did not meet a condition precedent to Eagle's obligation to indemnify.[11] Similarly, if Swissport failed to afford Eagle an opportunity to defend the action, then Swissport must prove its "actual liability" in the underlying action to demonstrate its entitlement to indemnity. *Id.* The issue whether Swissport employees were actually negligent in its conduct during the December 5, 2001 incident is, of course, an issue of fact. Because I conclude that both notice questions present genuine issues of fact, I cannot grant indemnity to Swissport as a matter of law.

As to the contractual notice requirement, the parties agree that Swissport did not

---

[11] I have some doubts about whether the SGHA notice provision is an express condition precedent to Eagle's obligation to perform. Under New York law, such conditions require "unmistakable language" like "if" or "unless and until." *Oppenheimer & Co. v. Oppenheim, Appel, Dixon & Co.*, 86 N.Y.2d 685, 691 (1995). The SGHA, by contrast, states as follows: "PROVIDED ALSO THAT [Swissport] shall notify [Eagle] of any claims or suits without undue delay . . . ." Pagano Aff. Ex. D at 550. The "provided also" language suggests a mere promise to perform that is not by its own terms "unmistakably" precedent to Eagle's obligation to indemnify. *See Oppenheimer & Co.*, 86 N.Y.2d at 691 ("[C]ourts will interpret doubtful language as embodying a promise or constructive condition rather than an express condition. This interpretive preference is especially strong when a finding of express condition [sic] would increase the risk of forfeiture by the obligee.") (citation omitted). Of course, extrinsic evidence of the parties' intent might cure these doubts, as might a compelling argument that I should read the "without undue delay" language by analogy to the "as soon as practicable" language in New York insurance contracts, language held by law to state a condition precedent, *see Argo Corp. v. Greater N.Y. Mut. Ins. Co.*, 4 N.Y.3d 332, 339 (2005). Eagle advances neither type of argument. In any event, my doubts are beside the point because Swissport does not dispute Eagle's assertion that the notice provision states a condition precedent.

12

tender the defense of the Tradewinds lawsuit until December 23, 2002, Swissport's Rule 56.1 Response ¶ 18; *see also* Pagano Aff., Ex. N at 1, over three months after service upon Swissport, Eagle's 56.1 Statement ¶ 15. The parties also agree that Eagle was on notice of the December 5, 2001 incident just a day after it occurred. *See* Eagle's Rule 56.1 Response ¶ 25. Taking that evidence in the light most favorable to Swissport, a rational factfinder could conclude that Eagle, being on notice of the incident and therefore watchful for potential claims, had no need to be informed of the commencement of the resulting lawsuit. To the extent Swissport reasonably believed this to be the case, Swissport did not unduly delay in tendering the defense. Taking the evidence in the light most favorable to Eagle, on the other hand, Eagle actually knew nothing of any claim or suit against Swissport as a result of the incident, and was only informed three months after the lawsuit was commenced. Such a delay might well be undue delay. These reasonably conflicting views of the evidence reflect a genuine issue of fact as to whether Swissport unduly delayed its tender of defense.

As to the equitable requirement that Eagle be afforded a "meaningful opportunity to defend" the lawsuit, similarly, the record does not permit judgment as a matter of law. The parties agree that on January 16, 2003, Swissport's counsel informed Eagle's counsel of a settlement conference the following day. *See* Eagle's Rule 56.1 Statement ¶ 21. On February 3, 2003, Swissport's counsel informed Eagle's counsel that Swissport counsel had possession of no settlement documents at the time. Eagle's Rule 56.1 Statement ¶ 26. Viewing this evidence in the light most favorable to Eagle, the lack of settlement documents could have justified some delay in Eagle's participation in the settlement. Buttressing this conclusion is the February 10, 2003 reminder from Eagle denying a duty to indemnify if Swissport refused Eagle "meaningful

notice or participation" in the settlement. *See* Pagano Aff. Ex. N at 4 (Letter of J. Bradley Green, Feb. 10, 2003). In this light, Swissport's warning that Eagle's lack of participation might prejudice Eagle came too late, as Tradewinds and Swissport reached a settlement the following day, Eagle's Rule 56.1 Statement ¶ 30. Viewing the evidence in the light most favorable to Swissport, on the other hand, Eagle was on notice of ongoing settlement negotiations from January 16 to February 10, 2003, and simply chose not to participate. I conclude that a rational factfinder could find either way on the question whether Eagle was afforded a meaningful opportunity to participate.

In sum, as judgment as a matter of law is unavailable on both issues of notice, the cross-motions for summary judgment must be denied.[12]

---

[12] Accordingly, I decline to consider whether judgment as a matter of law is warranted on whether the settlement with Tradewinds was "reasonable." I therefore have no occasion to rule on Eagle's motions to strike certain affidavits proffered by Swissport in support of the reasonableness of the settlement. I also decline to consider the parties' arguments concerning the amount of indemnification.

CONCLUSION

For the foregoing reasons, the cross-motions for summary judgment are denied. Jury selection shall commence on Monday, April 2, 2007 at 9:30 a.m. Trial shall commence on Monday, April 9, 2007 at 9:30 a.m. The parties shall appear for a final pre-trial conference on Monday, March 26, 2007 at 10 a.m.

So ordered.


John Gleeson, U.S.D.J.

Dated: Brooklyn, New York
      February 12, 2007